try to work quickly through these. Our next case is Fields v. City of Tulsa, 23-5001. Mr. Helms. Thank you. My name is Brian Helm. I represent the Planet Appellant, Mr. Ernest Fields, in this action. This action was brought under 42 U.S.C. 1983 against the City of Tulsa and two of its Tulsa Police Department officers, Cherish Comfort and Lucas Temple, as a result of Mr. Fields, the violation of Mr. Fields' clearly established Fourth Amendment rights. In October of 2018, Officer Comfort used what we believe to be objectively unreasonable and excessive force when he slammed Mr. Fields to the pavement. So it's our position that prior to being slammed to the pavement, Mr. Fields was detained without reasonable suspicion and at the time of slamming Mr. Fields to the ground that he was arrested without a warrant or probable cause. When you say detained without reasonable suspicion, could the police officers have properly said we are investigating a situation here, you're the subject, go stand at the counter until we have had a chance to visit with the complainant and so forth? I think that... And they're not engaged with him anymore. There is a duty to detain someone for the shortest amount of time necessary to gather the information. I think it's arguable prior to the time that Officer Temple goes and speaks to Miss Warren and speaks to the other officer and observes the car that they could ask him to stand there and speak to him. But I do believe that as soon as Officer Temple learns that much of the information he was provided through dispatch was not accurate, that the car is not damaged, that the tire hasn't had air let out of it, that no threats were made, that even by his own deposition testimony, Officer Temple really didn't have anything to go investigate at that point. When you said and speak to them, you lose me there because I don't understand why he can't say, all right, I'll go stand by the counter but I'm not talking to you about anything. In other words, he has the consent to speak to them, doesn't he? Yes, he does. He's not obstructing an investigation by declining to incriminate himself, in other words. Correct, he is not. He, I believe, has every right to refuse to answer questions that could incriminate him and he did in this case. But I think here they have no evidence that a crime has been committed and in fact they have all this evidence that a crime has not been committed. Are you saying they didn't have reasonable suspicion or that if they did have reasonable suspicion and could detain him, they used excessive force to get him to submit to Officer Temple? Once Officer Temple has spoken to the lady who called 9-1-1, has spoken with the officer who's over there interviewing her, that at that point he did not have reasonable suspicion to detain him any longer. And so when he walks back to the quick trip and tells him that he can't go pump his gas, that he is detained at that point by Officer Temple's own testimony, he didn't know what he was investigating, he didn't think a crime had been committed, he didn't think... Was there nothing done to the tires? I thought the video showed a deflated tire, but that's something I'm incapable of judging for myself. It is, the tires are not obviously deflated. They've not been slashed. They have, you know, she did not ever see him do anything to her tires or let air out of her tires. The officers, you know, in the body cam video, you can hear them saying that nothing appears to be done to the tires. And then ultimately, Ms. Warren drives off without ever putting any sort of air in her tires. Officer Comfort, at the time he applied force to fields, didn't he have reasonable suspicion to continue to believe that there were allegations that they were still investigating? At the point that Officer Comfort tackled fields from behind and slammed into the ground, it's our position that that elevated this from a detention to an arrest, and he would have required probable cause at that moment and not reasonable suspicion. Did he know anything about the complainant's conversation with Officer Temple? He did not know the contents of it. You know, Officer Temple had come back and immediately just told fields, you're detained, we need to figure out what's going on. Officer Comfort... Would any application of force to restrain him from leaving require probable cause under your theory of the case? Yes, I believe so. I believe that the takedown resembles a traditional... For purposes of my question, just say that he went over and blocked him from leaving. Would that have been an unlawful arrest under your theory? No, I don't believe so. So the application of force? Well, I believe if he had just gone and blocked him, I believe it would still be a detention. I don't believe that there was reasonable suspicion to even detain him at that point based on what Comfort knew. Well, that would be an arrest then. I'm sorry, can you say that again? It sounds to me that any conduct by the officers that restricted Fields' movement would have escalated into an arrest. I can't speak to all hypothetical possibilities, but I do... I know what happened was that he was slammed to the ground and that that did escalate it to an arrest. So what should the officer have done? He said goodnight to Mr. Fields. I mean, once it's clear that a crime hasn't been committed, that they have no legal justification to hold him, that there's nothing to continue investigating, they should have ended the detention and let him leave. But the officer who took him down didn't know that all the allegations had been shown to be unsubstantiated. That's your point, because another officer had talked to the alleged victim and had found there was really nothing unlawful that Mr. Fields had done, but that was only after talking to her. But the officer who took down Mr. Fields hadn't yet heard that. Is that correct? That is correct. He had also never heard any... I mean, he had taken no steps to gather any reliably trustworthy information. He had hearsay coming through dispatch. You know, he did hear a Quick Trip employee say... So he gets information about an alleged offense. He sees the alleged offender. He wants to talk to the offender, the alleged offender, whilst another officer is talking to the alleged victim. And the alleged offender doesn't want to talk to him and just leaves. But there's nothing that the officer can do. Here... Sorry. No, go ahead. Here, Officer Comfort never attempted to speak with Mr. Fields. He never attempted to gather any information. He merely just kept him there at the counter. Did Mr. Fields leave his keys on the counter? Of course, he goes over to the counter after he's told that they want to visit with him, and he lays his coat and some other items. And there's some indication in the record that he leaves his keys there, which would mean he's not leaving except on foot. Is that in the record established as such? Yes, sir. That is in the record. He left his keys. He left his wallet. He left his jacket. The jacket, I think, is important in two ways. One, even if he were to leave on foot, it's 6 a.m. in October. It's cold outside. Two, he testified that he took his jacket off to show that he was not a threat. And how about the hammer, so-called hammer? The so-called hammer is a tiny pocket knife with a little hammerhead kind of thing on the top. Was that on the counter or was that on his body? It's unknown. There was no evidence at the time that it was on his body. So, you know, here we think that the court made error granting summary judgment. A large part of that is based on failing to appropriately apply the summary judgment standard. Notable instances are the district court's interpretation of Mr. Fields' conduct, that he was becoming, you know, aggressive or hostile versus, you know, agitated or annoyed, that Mr. Fields was attempting to flee when he is clearly walking out of the quick trip. I mean, he has his hands out to his side. He's taking a wide turn of Officer Temple. I can't imagine. He walks a very fine line. I mean, he clearly knows that there's a potential for force because of kind of how aggressive the cops are at detaining him there. He takes off his jacket. I'm not a threat. Put down my keys. I'm not fleeing. He walks out. Had he walked straight at Officer Temple, I'm sure he would have been tackled for walking straight at the officer. You know, again, he put his hands out to his side. There was really nothing more that Mr. Fields could have done to show that he was not a threat and not attempting to run. And the court, the district court, instead viewed those facts as Mr. Fields clearly, you know, intended to not listen to the officers, clearly intended to flee, and, you know, was a potential threat. Notably, the court does not identify what immediate threat Mr. Fields posed to Officers Temple, Cuthbert, or anyone else in applying the Graham factors. And that's because there was no threat posed. This was also supported by Officer Temple's testimony that he did not believe he was a threat to anyone. And, you know, that Mr. Fields was coming outside, the last words said to him are, you know, okay, let's figure this out. It wasn't, hey, stop. Hey, you're under arrest. Hey, handcuffed. I mean, there was no commands. It was simply a, all right, let's talk about this. But yet, as Mr. Fields gets one foot out the door, we can see from quick trip surveillance that footage that Officer Cuthbert has, you know, already gotten himself into a position, is already moving after Mr. Fields. I'd like to reserve my last minute. May it please the court. My name is Michelle McGrew. I represent the city of Tulsa. I'm a senior assistant city attorney. I represent the city and Officers Lucas Temple and Chairs Comfort. And I respectfully request this court to affirm the district court's granting of summary judgment, finding she correctly applied the summary judgment standards by finding that no reasonable jury, given this record, could find in favor of Mr. Fields on any of his claims. She also correctly applied the Graham factors to find that Officer Comfort's simple takedown of Mr. Fields, all three Graham factors weighed in favor of Officer Comfort. And there was no excessive use of force by the simple takedown. And that the officers had reasonable suspicion to detain Mr. Fields because they were investigating what they were dispatched to was domestic violence with a weapon. They were there to investigate that charge at about 555 in the morning. Mr. Fields, soon to be ex-wife, as she described herself to dispatch, had pulled, was in a quick trip when he pulled in and blocked her vehicle with his truck. She had backed into a parking spot by the gas pump, but away from the front of the store. And he pulled in parked perpendicular in front of her so she could not leave. She couldn't back up because there was a curb behind her and she couldn't leave. She testified that there had been, I mean she didn't testify, she told the officer there had been violence before this and that he had exited his vehicle with a hammer in his hand. And that's what information these officers responded to. Officer Temple was assigned as the primary officer. Officer Salih and Officer Comfort were there as backing officers and just to assist the primary officer in his investigation of what was alleged by the 9-1-1 call and dispatch. And that Mrs, her name is Tamika Warren, told dispatch that he's letting the air out of the tires and that she's afraid of him. That's not a non-violent misdemeanor. That's what they're there to investigate. And Officer Salih, I'm sorry. That's not a non-violent misdemeanor? Well that's what, no, it is a violent misdemeanor. But what feels is claimed throughout this case that they were just there for a non-violent misdemeanor. But it's domestic violence with a weapon. It's violent when you show up when it's dark outside and pull up to your soon-to-be ex-spouse and she's alone in her vehicle. She's unarmed. He gets out of his truck with a hammer in his hand. And whether he's tapping on the window or banging on it, as she told 9-1-1, doesn't make any difference to the crime because he still let the air out of her tires according to what Tamika Warren said. And the officer didn't say there was nothing wrong with her car. He said that the tires on both sides appeared to be low. That's in the record. Those are the facts. And Officer Salih was the first one there. She sees a man matching the description that Ms. Warren gave dispatch that it was a black man driving a white truck with a brown cap with Tulsa on it, a blue jacket, and a black shirt. She sees a man that appears to match that description. It's inside Quick Trip. And she goes back out to talk to Ms. Warren. At the time of the tackle, why would a reasonable officer think there was any kind of threat posed by Mr. Fields? Because this is a busy Quick Trip, even at 6 a.m. There are people coming in and out. There's employees coming in and out. And what the information they have is that he had a hammer. They didn't have that it was a pocket-sized that it actually was a hammer knife. Turned out that had a folding blade into the handle. That doesn't make it any less of a threat. It's still a hammer. And what they know is that he has a hammer and he has not been searched for a hammer or any other weapons. And what Officer Temple, when he goes to the car, he tells to Ms. Warren and Officer Salee, he tells Officer Comfort, don't let him leave. And Officer Comfort repeatedly tells him, you're detained. And he says, now I'm going to get my gas. First of all, I'm going to make my coffee. I thought the opposing counsel said he was never told to stop, but he was told he was being detained? Yes, the body camera video over and over shows him, you're being detained. You're detained. That would be one thing, but it's detained because we want to talk to you. Right. And then when Officer Temple comes back, because Officer Comfort is not the primary on the job. Let me pick up with that point. And maybe I have a blind spot and maybe I don't. Which is take the usual situation we see so often, which it's a roadside stop and back to the trooper's car and travel plans don't make sense and so forth and so on. And the trooper builds reasonable suspicion of drugs, let's say. And the trooper says, here's your license. Here's your ticket. Have a nice day. And then as the person walks the car, the trooper sticks that out. Hey, can I ask you some more questions? And if the answer is no, that's it. Trooper has a choice. Go stand over there. We're going to wait for a drug dog or have a nice day. But there's not a third option, which is, well, you say you're not going to answer any of my questions. Yes, you are. I've got a whole series of questions. When's the last time you used methamphetamine? So that's off the table. And so this notion of detention and reasonable suspicion, if they have reasonable suspicion, that's great. They can hold him until they investigate. But they don't have a right to talk to him. And that's his problem. If you watch more than I have, that's why he's so upset. Detain me for what? And so forth and so on. So my question is, why could they even detain him for that purpose legally? Legally, they can detain him because they have reasonable suspicion that there's been a crime. And if you're detained by an officer, you do have to give your identifying information to the officer, who you are. Are you, in fact, Ernest Fields? They have not conducted that yet. And he said, we're just going to talk about what happened. And he keeps saying over and over, oh, implying that he's going to cooperate. Okay, I'm just going to get my, I'm going to just going to go pay for my coffee. Then I'm just going to go get my gas. And then he says he's going to, he's going to talk to me, or he implies that he's going to talk to him. But the officers have the right under the Fourth Amendment to legally detain him if they suspect with articulable facts that there is crime, there has been a crime. And that's exactly what they're doing. What if the officers had said, you're detained, and we're going to get to the bottom of this, because we've got a whole bunch of questions about what you were doing out there in front of the tires. And we understand you have a hammer, and you're going to tell us every bit about it. Would you say that's a proper detention? And he says, I'm not talking to you. He doesn't say that. He doesn't say that until he takes off his giant key chain with all these keys on them and puts those on the counter. Then he says, I ain't talking to nobody. But he says that as he's putting his stuff on the counter, then he walks back to the officer, looks at him, then unzips his jacket, then puts it back. But yes, the officers had articulable facts. One, he blocked the car in. Two, that she was afraid of him. Three, he got out of his truck with a hammer. They don't know. They're still investigating what type of hammer. And four, that he's let the air out of her tires, that she was afraid to get out of the vehicle. And he led them to believe that he was going to talk to him after he did all of these things. But there's no evidence that his keys were on that key chain, or his truck even used a key. It could have had a fob. That is not an evidence. We don't know whether he placed his own key to that truck. Because after he's taken to the ground by Officer Comfort, he's handcuffed, and he gets back up. There are so many people out there. There's customers on the way in. And what Mr. Field says is, did you see that? They slammed me to the ground. I was just going to get gas. So he had no intention of making a wide turn to come talk to Officer Temple. He took multiple steps. He was going towards his truck when he had been told to step outside and talk to Officer Temple, away from the doorway so it wouldn't interfere with Quick Trip's business. And at that point, it became clear that he was now, they were investigating this separate crime, the misdemeanor of obstructing the police officer doing their duties. And that's what he did. And under Title 21, Section 540 of Oklahoma statutes, if you intentionally interfere or delay an officer from conducting their duties, that is a misdemeanor offense. And that's, and Officer Comfort even says, and even though it's an objective standard, he said, I thought you were going to run to your truck. And that's what Judge Egan said. And she looked through this body, all the video, the Quick Trip video, the surveillance video, and the body-worn camera video, looked through it independently, did not take the officer's characterization of the evidence or Mr. Fields, where he says he was just annoyed. And the officer said, no, he was going, he was increasingly agitated, he was increasingly angry, and he was not complying with their orders. And they didn't detain him for an inordinate amount of time, but he clearly didn't follow instructions to, first, Officer Comfort told him not to leave Quick Trip, and he was heading closer and closer towards the door. By the time Temple comes back, he goes, okay, now let's talk. Come stand over here. He doesn't. He heads for his truck. And they tell him, no, you're not going to get gas now. We're going to talk. And he didn't, he doesn't have to say, he has to do what the officer said to do, but he doesn't have to give a statement or anything if he doesn't want to, but he would not even comply with where they told him to stand outside of Quick Trip's door. And again, he had not been searched. He is still a risk. He's still a threat to the officers. And a reasonable officer, this is not a subjective standard, giving these facts, a reasonable officer could have assumed that when he walked outside the door, didn't make the left towards Officer Temple, where he was ordered to go, that he was either going to throw a punch at the officers, Officer Comfort, or go straight to his truck, which was right in front. And a reasonable officer would not have thought that taking him to the ground, where he pops right back up after he's handcuffed, not hurt, and then says, did you see that? He threw me to the ground and I'm just going to get gas. That's, he's admitting, that's where he was going, to his truck, not to talk to the officers. And under Graham, all three, for the excessive force claim, all three favor the seriousness of the crime, which was... What's that? Obstruction? No, the crime that they were, they were first, the underlying crime was the domestic violence with a weapon. That's what they were there initially to investigate. That is a serious crime. The second is, was he a threat to others or the officer? And yes, the same situation. He's getting angry. He's not complying. He hasn't been searched. And the allegations are that he had a hammer. They don't know if it's in his truck or he's still on him. And it was not placed on the counter. So he's still a danger and he's angry and he's not listening. And he is a potential threat to anyone who walks in the door or the officer. And it doesn't matter whether or not, and I think he misstates what Officer Temple says, because they were worried about the customers coming in and the employees, because he hadn't been searched in the hammer incident. But it was not a subjective standard. It's what an objective officer at the scene, given these facts, would have thought. And no officer would have thought that taking him to the ground under the situation would have been excessive force. So there's no Fourth Amendment violation. They had reasonable suspicion. To detain him was not an inordinate amount of time. It was detained to investigate the domestic with a weapon. That turned into obstruction when they delayed the officer's investigation and he wasn't complying. And the third, I forgot the third gram factor, which it was his threat to flee, which we know that's exactly what he was doing. He admitted that by saying, I was going towards my truck to get gas in my truck. So they fail on that. Why is that fleeing when he has the car keys? They left the car keys on the counter. No, there's no evidence that that is the truck. He's got, there are more than one set of car keys on that key chain that he throws up there. But there's no evidence that that is the truck key, or that the truck key is still not in his pocket or in the truck itself, or if it's even a fob. But to leave a whole bunch of keys is kind of inconsistent with driving off. But not if you have the key to your pocket, to your truck in your pocket, or if the truck's in the car. Right, right, right. So he could have driven off with the whole bunch of your keys on a counter and then leave. But based on the facts before these officers, and what an objective officer is going to think, is objectively that he is either going, he's not complying, he's either attempting to flee by getting to his truck, and he's not maybe thinking clearly about, we don't know in fact what he left, or what's in the truck, other than we still haven't searched him and we still don't know where the hammer knife is. Is he an uncooperative violation of the Oklahoma Obstruction Statute? Yes, under Title 450, you don't have to physically resist to obstruct. Words alone can do it, and especially when officers are investigating a domestic, if they delay that investigation, there's probable cause to arrest that person for violation of obstruction, which is what he was arrested for. And the judge did not, she used the record, and no reasonable jury could find under the entire record that he could prove any of his cases. The officers are entitled to qualified immunity, and because he has not approved a constitutional violation, and because there's no underlying constitutional violation, he cannot prove his Monell liability claim against the city, because without that, that's the first step he has to prove, and he's failed to do that. I urge you to affirm the judge's decision, and I thank you for your time. You have any other questions? Thank you. Thank you. I only have 53 seconds, so if anyone has a question, I would love to answer that. Otherwise, I would just state that... You might touch on why his lack of cooperation was an obstruction under Oklahoma law. I mean, a review of the video, again, shows Officer Comfort is never asking him any questions. He's not, for the very first part, he's not directing him to do anything. He's just standing there watching him at the counter as he pays for his gas and coffee. It's not until Raddatz Temple gets back that he tells him, you know, you're detained. Very, I mean, less than a minute, there's the takedown, and so I don't see how Mr. Fields paying for his gas and coffee, staying in the quick trip, as he's been told to do, is causing any sort of delay in the investigation. At the moment that an officer does say, come outside and talk to me, he's coming outside to at least follow the officer's commands. Aren't the officers entitled to control the scene of the investigation to some extent? I just, I don't see how there was any delay caused or obstruction, I mean, or an obstruction of any sort. Again, at the time, he's complying with the directives that he's taken down, but at no point had he done anything to obstruct. He had merely done what he was told, which was to stay inside the quick trip. He paid for his gas, he paid for his coffee, and no one was attempting to do anything with Mr. Fields at that point to investigate. Similarly, I would say there was no reasonably trustworthy, or information from a reasonably trustworthy source that Mr. Fields, or that a crime of domestic violence with a weapon had occurred.